IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUSTAINABLE SEA PRODUCTS
INTERNATIONAL, LLC, et al.,
      Plaintiffs,

v.                                 Civil Action No. 3:21cv697

AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY & GREAT
AMERICAN INSURANCE COMPANY,
      Defendants.

## OPINION

Sustainable Sea Products International, LLC ("SSPI"),[1] operates a seafood processing plant

in Richmond, Virginia. To protect its business, SSPI entered a contract for property insurance (the

"Contract") with American Empire Surplus Lines Insurance Company ("AESLIC"), effective

April 10, 2020. On June 5, 2020, a fire destroyed the Richmond plant, SSPI's only facility. A

protracted dispute over the extent of AESLIC's contractual liability followed and forms the basis

for this suit.

SSPI's amended complaint contains four counts: breach of contract by AESLIC (Count I);

"additional consequential contract damages against AESLIC resulting from [AESLIC's and its

corporate sibling Great American Insurance Company's ("GA") ("the defendants")] contractual

breaches which also constitute unfair claim settlement practices pursuant to Virginia Code § 38.2-

510" (Count II); "material misrepresentations amounting to fraud" against GA (Count III); and

declaratory judgment (Count IV). (ECF No. 9, at 23–27.) In Count IV, SSPI seeks two things:

(1) a declaration that AESLIC has waived or is estopped from requiring SSPI to engage in appraisal

---

[1] SSPI's co-plaintiffs, SSPI Mid-Atlantic LLC and SSPI Real Estate Holdings LLC, are
two of its corporate subsidiaries. The Court refers to the three plaintiffs together as SSPI.

under the Contract and (2) a declaration that SSPI may recover in full all uninsured losses before AESLIC may recover any amount in subrogation. SSPI also requests attorneys' fees based on the bad faith of the defendants.

The defendants each move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 11, 16.) AESLIC asks the Court to dismiss Counts II, III, IV, and SSPI's request for attorneys' fees. AESLIC also asks the Court to compel the parties to participate in appraisal. GA asks the Court to dismiss Count III, the only count that SSPI brings against GA.

The Court will grant in part and deny in part AESLIC's motion. Specifically, the Court will dismiss Count II against AESLIC because Virginia Code § 38.2-510 does not create a private right of action. The Court will also dismiss Count III as against AESLIC because SSPI asserts Count III only against GA. Because the Court will direct AESLIC and SSPI to participate in the appraisal process and stay the case pending completion of the appraisal,[2] the Court will deny the portion of Count IV that requests a declaration prohibiting compelled appraisal. The Court will allow the remainder of Count IV to proceed against AESLIC because Virginia law permits the requested relief should SSPI prevail on the merits of Count I. Finally, the Court will allow SSPI's request for attorneys' fees to survive but will stay discovery regarding the defendants' bad faith in handling SSPI's claim until after a determination has been made on the issue of AESLIC's breach of contract.

---

[2] Although the Court will direct AESLIC and SSPI into appraisal, it will also rule on the merits of the defendants' motions. When addressing the merits of the defendants' motions, the Court need not delve into the subject of appraisal—a determination of the value of the covered loss. *See* Section II.C.1.i of this opinion(finding that appraisal is a form of arbitration); *Skirchak v. Dyanmics Rsch. Corp.*, 508 F.3d 49, 57 (1st Cir. 2007) (noting that agreements to arbitrate do not "divest a court of its jurisdiction"); *DiMercurio v. Sphere Drake Ins.*, 202 F.3d 71, 77 (1st Cir. 2000) (noting "the modern view that arbitration agreements do not divest courts of jurisdiction, though they prevent courts from resolving the merits of arbitrable disputes").

As for GA's motion to dismiss, the Court will deny the motion because SSPI sufficiently pleads a claim for fraud against GA.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT[3]

SSPI operates a seafood processing plant at 1508 Brook Road in Richmond, Virginia.[4] (ECF No. 9 ¶ 4.) This Richmond facility is SSPI's only location. In late 2017, SSPI "purchased and subsequently had professionally installed a self-contained fry line" in its Richmond plant. (*Id.* ¶ 11.) The installation cost nearly $1 million.

The defendants are both subsidiaries of American Financial Group ("AFG"). AESLIC is a surplus lines insurance company.[5] GA provides claim handling services to AESLIC.

SSPI and AESLIC entered the Contract for SSPI's Richmond facility, effective April 10, 2020. The Contract contains a provision allowing either party to demand an appraisal in the event of a dispute over the value of a covered loss. The Contract also contains a protective safeguards provision that requires SSPI to install and maintain automatic fire extinguishing equipment as a condition to coverage.

A fire ravaged SSPI's Richmond facility on June 5, 2020. SSPI reported the fire and resulting losses to AESLIC and GA the very next day. In the property insurance industry, it is

---

[3] SSPI failed to adequately allege diversity jurisdiction in its amended complaint. (*See* ECF No. 20.) The Court, therefore, directed SSPI to submit information demonstrating complete diversity from the defendants. (*Id.*) SSPI provided the necessary information on August 4, 2022. (ECF No. 22.) The Court, therefore, finds the parties completely diverse such that it has jurisdiction to hear the case pursuant to 28 U.S.C § 1332.

[4] SSPI acquired Dickies Seafood, a Richmond-based seafood brand, in 2017. (*Id.* ¶ 9.)

[5] "Surplus lines are substandard risks that standard markets generally do not handle." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 491 (4th Cir. 1998). "In general this is insurance involving special risks or for some other reason not falling within the usual lines of authorized business." *Robertson v. California*, 328 U.S. 440, 450 n.10 (1946).

customary "for the insurer to provide the insured with periodic substantial financial 'advances' . . . long before the fire related damage to the building and equipment and loss of income is complete, or even fully assessed." (ECF No. 9 ¶ 40.) "On or about June 7, 2020, GA adjuster Mark Miller contacted SSPI and offered SSPI an advance[,] asking [SSPI] to simply identify how much was initially needed and to provide SSPI's wiring instructions for the payment." (*Id.* ¶ 42.) "GA confirmed the offer of an advance in writing on June 8, 2020." (*Id.*)

In the days following the promise of an advance payment, the defendants requested extensive documentation from SSPI. SSPI began providing the requested documents to the defendants on June 10, 2020. By June 16, 2020, the promised advance had not arrived, and SSPI grew worried about the claim. That same day, SSPI contacted its insurance broker. The broker "advised [SSPI] that representatives of GA and AESLIC were now refusing to provide any advance and would pay nothing until after SSPI submitted its claim." (*Id.* ¶ 48.) SSPI responded by "retain[ing] coverage counsel and advis[ing] GA and AESLIC to direct all further contact to such counsel." (*Id.* ¶ 50.)

Eventually, "SSPI . . . learned that AESLIC and GA had decided to deny any advances to [SSPI] within a week of the June 5 loss, and without any independent representation." (*Id.* ¶ 51.) "On June 17, 2020, . . . Miller stated that SSPI's request for an advance was 'under consideration,' while continuing to misrepresent SSPI's cooperation and production of requested documents." (*Id.* ¶ 52.) SSPI responded through counsel that same day, "noting [its] prior production of . . . the information requested" and requesting "that the parties agree to confidentiality regarding SSPI's submissions." (*Id.* ¶ 54.) GA used information gained through SSPI's cooperation to identify and pursue third parties GA suspected to have caused or contributed to the fire.

On June 23, 2020, SSPI again requested confidentiality and indicated its willingness to transfer additional documents. The defendants responded after business hours, quoting without

any context the Contract's protective safeguards and cooperation provisions, but failing to "address SSPI's repeated [re]quests for confidentiality." (*Id.* ¶ 59.) Later that same evening, the defendants' outside counsel Robert Reverski "sent a second correspondence to SSPI's counsel[,] again quoting policy provisions and falsely accusing SSPI of failing to cooperate with the [pending] site inspection by misrepresenting SSPI's position." (*Id.* ¶ 60.) At this point, SSPI had not received an explanation for why the defendants had cited the protective safeguard provision, leading SSPI to believe the defendants accused SSPI of bearing some responsibility for the June 5 fire.

SSPI responded through counsel on June 24, 2020, reiterating its ongoing efforts to fully cooperate and challenging the defendants' assertion that SSPI failed to cooperate with the defendants' subrogation counsel, Matthew McLean. "McLean never disputed that SSPI had cooperated, and [the defendants] never acknowledged [their] error or corrected [their] misrepresentation." (*Id.* ¶ 62.)

A joint investigation of the fire site took place on June 24–25, 2020. The defendants invited third parties with potential liability to participate in the inspection. "[C]ounsel for both SSPI and [the defendants] jointly prepar[ed] a protocol for the inspection . . . and the June 24–25, 2020[] site inspection proceeded without incident." (*Id.* ¶ 56.) Thirty-one people, including fire consultants, forensic engineers, electricians, attorneys, and adjusters attended the joint inspection. The inspection suggested that "the fire may [have been] linked to the installation of the vent system by one or more of the contractors who performed the install." (*Id.* ¶ 69.)

"After the site inspection, and by no later than June 29, 2020[,] . . . GA had concluded that SSPI's conduct was not involved in the loss." (*Id.* ¶ 64.) Indeed, subrogation counsel for the

defendants indicated to SSPI's insurance broker that the defendants had obtained evidence "to exculpate [SSPI] from liability."[6] (*Id.* ¶ 64)

"But [the defendants] continued to assert a coverage defense based on the Protective Safe-guards Endorsement until at least August 25, 2020." (*Id.* ¶ 67.) They did so even while conducting a subrogation investigation into third party liability. Between June 29 and August 20, 2020, SSPI incurred "tens of thousands of dollars in legal fees and other response costs and additional insured and uninsured losses" while addressing the protective safeguards defense. (*Id.* ¶ 108.) "During this time and as a result of [the defendants'] conduct, SSPI lost key employees, and was forced to lay off others, and did not know whether [the business] would be able to survive." (*Id.* ¶ 44.)

## II. AESLIC'S PARTIAL MOTION TO DISMISS[7]

AESLIC moves to dismiss Counts II–IV of SSPI's amended complaint, as well as SSPI's

---

[6] SSPI's inventory adjuster attended the June 24–25 joint inspection and wrote its own report. The inventory adjuster concluded that SSPI was not responsible for the loss and paid SSPI's claim in full by August 2020. SSPI provided a copy of the inventory insurer's report to the defendants on or about July 15, 2020.

[7] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any fac-tual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chev-rolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all alle-gations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausi-bility when the plaintiff pleads factual content that allows the court to draw the reasonable infer-ence that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In evaluating a Rule 12(b)(6) motion, courts typically focus only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

In diversity cases, the district court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). "Under Virginia law, a con-tract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Res. Bankshares Corp. v. St. Paul*

request for attorneys' fees under Virginia law for bad faith claims handling.  For the reasons set forth below, the Court will grant AESLIC's motion to dismiss Counts II and III.  The Court will grant in part and deny in part AESLIC's motion as to Count IV.  The Court will allow SSPI's request for attorneys' fees to survive but will stay discovery regarding the defendants' bad faith in handling SSPI's claim.  Finally, the Court will direct AESLIC and SSPI to participate in the appraisal process.

### A. Count II – Bad Faith Claims Handling

The Court will dismiss Count II because the Virginia Unfair Insurance Practices Act does not create a private cause of action.  *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 675–76 (4th Cir. 1986) (finding that the Virginia Unfair Insurance Practices Act does not create a private cause of action, concluding that the Virginia Supreme Court "would reach the same result"), *cert denied* 479 U.S. 1091 (1987); *see also* Va. Code Ann. § 38.2-510 ("No violation of this section shall of itself be deemed to create any cause of action in favor of any person other than the Commission.").  To infer a private cause of action here would contradict the plain language of the statute.  As such, SSPI's claim under Virginia Code § 38.2-510 fails.

### B. Count III – Material Misrepresentations Amounting to Fraud

The Court will dismiss Count III against AESLIC.  Although SSPI alleges misrepresentations by both AESLIC and GA, SSPI titled Count III "Material Misrepresentations Amounting to Fraud Against Great American."  (ECF No. 9, at 25.)  Indeed, in responding to AESLIC's motion to dismiss, SSPI explains that Count III "is specifically asserted only against Great American, not

---

*Mercury Ins. Co.*, 407 F.3d 631, 635–36 (4th Cir. 2005).  Because the Contract was delivered to SSPI in Virginia, Virginia law controls this contractual dispute.

AESLIC." (ECF No. 14, at 8.)  Because the parties agree that SSPI does not bring a claim for fraud against AESLIC, the Court will dismiss Count III against AESLIC.

### C. Count IV – Declaratory Relief[8]

In Count IV, SSPI seeks two forms of declaratory relief: (1) a declaration that AESLIC has waived or is estopped from requiring SSPI to engage in appraisal under the Contract and (2) a declaration that SSPI may recover in full all uninsured losses before AESLIC may recover any amount in subrogation.  The Court will address the requests separately.

### 1. Declaration Barring Appraisal

First, SSPI seeks a declaration that AESLIC has waived or is estopped from requiring SSPI to engage in appraisal under the Contract.  AESLIC asks the Court to dismiss Count IV and send the parties to appraisal.  The Court finds that the appraisal provision of the Contract amounts to an enforceable arbitration clause that AESLIC has not waived.  (See ECF No. 9-1, at 20.)  The Court, therefore, will not only dismiss SSPI's request for a declaration prohibiting compelled appraisal but will, in fact, direct the parties to appraisal.

---

[8] "The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts 'may declare' the rights of interested parties." *Kapiloff,* 155 F.3d at 493.  A declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir. 1937)).  "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *Kapiloff,* 155 F.3d at 494.

*i. Appraisal is a Form of Arbitration*[9]

"[A] dispute process designated as an appraisal can be considered an arbitration within the scope of the Federal Arbitration Act."[10] *Norfolk S. Ry. Co. v. Zayo Grp. LLC*, No. 1-21cv1299, 2022 WL 883935, at *2 (E.D. Va. Mar. 23, 2022). In determining whether an appraisal provision constitutes an enforceable arbitration clause, "what is important is that the parties clearly intended to submit some disputes to their 'chosen instrument for the definitive settlement of [certain] grievances under the Agreement.'" *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (alteration in original).

Having reviewed the Contract's appraisal provision, the Court finds that SSPI and AESLIC intended to submit some disputes to third party and, therefore, the Contract's appraisal provision is an enforceable arbitration clause. Pursuant to the Contract, the appraisal process begins with each party selecting a neutral appraiser. The two appraisers then choose an umpire, who resolves any disputes between the neutral appraisers. A final decision agreed to by any two of the neutral appraisers or the umpire binds both parties. This multistep process produces unbiased results by insulating the final calculation of the award from the parties. Courts faced with similar appraisal

---

[9] Both the Contract and Virginia statutory law provide for the appraisal of insurance claims. Inspection of the Contract and Virginia law reveals that the processes set forth in both are functionally identical. *Compare* Va. Code. Ann. § 38.2-2105, *with* ECF No. 12-1, at 30. The Court, therefore, does not distinguish between AESLIC's right to appraisal under Virginia law and its right to appraisal under the Contract.

[10] The Federal Arbitration Act mandates federal courts to enforce arbitration agreements in most circumstances and applies to "[a] written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2; *see also Vagish, LLC v. Seneca Specialty Ins. Co.*, No. 3-13cv3161, 2014 WL 12638788, at *3 (D.S.C. July 25, 2014) ("While not a condition precedent to filing suit . . . the appraisal condition is still a mandatory provision once it is invoked by one of the parties.").

mechanisms have treated them as arbitration processes.[11]  Accordingly, this Court finds that the appraisal process set forth in the Contract is an enforceable arbitration provision.

### ii. AESLIC Has Not Waived its Right to Appraisal

SSPI asks the Court to issue a declaration prohibiting compelled appraisal under the Contract because AESLIC's behavior prior to invoking the appraisal provision constitutes a waiver of its right to an appraisal.  The Court disagrees.  "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."  *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985).  "Neither delay nor the filing of pleadings by the party seeking [a stay to arbitrate] will suffice, without more, to establish waiver of arbitration."  *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987).  "The dispositive question is whether the party objecting to arbitration has suffered actual prejudice."  *Id.*  "[H]owever unjustifiable [the] conduct, there can be no waiver unless that conduct has resulted in prejudice to the other party."  *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (4th Cir. 1995).

SSPI has not suffered sufficient prejudice to prevent this Court from compelling appraisal.  The definitive Fourth Circuit case on arbitration waivers is *MicroStrategy, Inc. v. Lauricia*, wherein the party opposing arbitration suffered far more prejudice than SSPI has but still failed to carry the heavy burden of proving waiver.[12]  By comparison, AESLIC's invocation of its right to

---

[11] *See, e.g., Tigre Fibres, LLC v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712, 715 (E.D. Va. 2008); *Norfolk S. Ry. Co.*, 2022 WL 883935, at *3; *Liberty Mut. Grp., Inc. v. Wright*, No. 12-0282, 2012 WL 718857, at *6 (D. Md. Mar. 5, 2012).

[12] In *MicroStrategy*, Lauricia signed an employment contract containing an arbitration clause.  *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 246 (4th Cir. 2001).  "On March 8, 2000, Lauricia filed a charge with the EEOC alleging age and sex discrimination."  *Id.*  On March 13,

appraisal causes SSPI to suffer only mild prejudice. Although the relationship between AESLIC and SSPI has been contentious since the June 5, 2020 fire, this litigation began only in November 2021. AESLIC asserted its right to appraisal three months later.[13] Neither party will carry into appraisal any undue advantage from exploitation of federal discovery rules.[14] The Court, therefore, finds no basis for waiver of AESLIC's right to appraisal.

\*          \*          \*

Finding that the appraisal provision of the Contract amounts to an enforceable arbitration clause that AESLIC has not waived, the Court will dismiss SSPI's request for a declaration prohibiting compelled appraisal and direct the parties into appraisal.

---

MicroStrategy placed Lauricia on paid administrative leave, in part due to her pending discrimination claim against the company. *Id.*

Over the next three months, MicroStrategy filed three separate civil actions against Lauricia, in both federal and Virginia courts. *Id.* at 247. MicroStrategy sought to invoke arbitration for the first time when Lauricia filed her discrimination suit on June 16, 2000. *Id.* at 248. MicroStrategy had already made one trip to the Fourth Circuit and back before Lauricia filed her suit. *Id.* at 247.

Nonetheless, the Fourth Circuit found that Lauricia suffered insufficient prejudice to find that MicroStrategy had waived its right to arbitrate. *Id.* at 250. Although both sides had expended resources in the previous litigation, "the expense and effort associated with those claims [could not] be used in support of the argument that MicroStrategy waived its right to arbitrate the discrimination claims." *Id.* at 251. While numerous and "remarkably aggressive," MicroStrategy's previous claims against Lauricia were "distinct, both factually and legally," from the discrimination claim that it wanted to divert to arbitration. *Id.* at 250.

[13] AESLIC sent SSPI an Appraisal Request Letter on February 7, 2022, nearly two months after AESLIC received service of SSPI's initial complaint. (ECF No. 12, at 18.)

[14] When evaluating prejudice to the party opposing arbitration, courts recognize that discovery may be more limited in arbitration than it is in federal court. *See Leadertex*, 67 F.3d at 27 (rejecting the district court's finding of prejudice, in part, because the party opposing arbitration had not yet disclosed any facts that would have been unavailable in arbitration). This case does not present this concern because discovery in this case has not yet begun.

2. *Declaration Affirming SSPI's Right to be Made Whole Prior to Any Subrogation*

SSPI also seeks a declaration that SSPI is entitled to recover in full all uninsured losses before AESLIC may recover any amount in subrogation.[15]  Put differently, SSPI asks the Court to declare the "made whole" doctrine— a common law rule that "[t]he right of subrogation cannot be enforced until the *whole* debt is paid"—applicable to the parties here.  *White v. Nationwide Mut. Ins. Co.*, 361 F.2d 785, 787 (4th Cir. 1966) (emphasis added) (quoting *Obici v. Furcron*, 160 Va. 351, 361, 168 S.E. 340, 344 (1933))  AESLIC argues that the made whole doctrine does not exist in Virginia and that even if it does, the Contract precludes application of the doctrine here.  Because this Court finds that Virginia law follows the made whole doctrine and that the Contract does not preclude the doctrine's application, the Court will not dismiss SSPI's request for a declaration that it must be made whole prior to subrogation efforts by AESLIC.

---

[15] Subrogation is "the substitution of one party in the place of another with reference to a lawful claim, demand, or right so that the party that is substituted succeeds to the rights of the other." *Erie Ins. Exch. v. Alba*, 298 Va. 673, 679, 842 S.E.2d 195, 198 (2020).  "Subrogation 'is not a matter of right but is granted or withheld as the equities of a particular case may require.'" *In re Cardian Mortg. Corp.*, 122 B.R. 255, 261 (Bankr. E.D. Va. 1990) (quoting *Thompson v. Miller*, 195 Va. 513, 520, 79 S.E.2d 643, 647 (1954)).  "[T]he equitable rationales for subrogation are generally acknowledged to be (1) preventing the injured party's windfall from double recovery and (2) avoid the injustice of the tortfeasor receiving a windfall by escaping any payment while the innocent insurer shoulders the entire burden." *Schwarz & Schwarz of Va., L.L.C. v. Certain Underwriters at Lloyd's*, No. 6-7cv42, 2009 WL 2882034, at *11 (W.D. Va. Aug. 31, 2009), *adopted and aff'd in its entirety*, 677 F. Supp. 2d 890 (W.D. Va. 2009).

Virginia recognizes two forms of subrogation: legal and conventional. *Fed. Land Bank of Balt. v. Joynes*, 179 Va. 394, 401–02, 18 S.E.2d 917, 920 (1942). Legal subrogation arises by law, when one pays a debt due by another; conventional subrogation arises from contractual agreement. *Id.* at 401, 18 S.E. at 920. The distinction is not relevant to this case. *See id.* at 401–02, 18 S.E. at 920 ("The progressive extension of both types of subrogation has somewhat obliterated this line of division."); *see also Martine v. Hertz Corp.*, 103 F.3d 118 (Table), 1996 WL 694438, at *5 (4th Cir. Dec. 5, 1996) ("Whether legal or conventional, subrogation is an equitable remedy." (quoting *Kittle v. Icard*, 185 W. Va. 126, 405 S.E.2d 456 (1991)).

*i. Virginia Recognizes the Made Whole Doctrine*

The made whole doctrine "is a general equitable principal of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *PRC, Inc. v. O'Bryan*, 47 Va. Cir. 81, 1998 WL 972277, at *3 (1998) (quoting *Barnes v. Ind. Auto. Dealers Ass'n of Cal. Health & Welfare Benefits Plan*, 64 F.3d 1389, 1394 (9th Cir. 1995)).[16] The doctrine rests in part on the principle that the insured has paid the insurer to bear the risk of loss when one party must go unpaid to some extent. *See St. Paul Fire & Marine Ins. Co. v. W. P. Rose Supply Co.*, 19 N.C. App. 302, 305, 198 S.E.2d 482, 484 (1973).

Although the Virginia Supreme Court has never addressed the made whole doctrine by name,[17] Virginia law has long recognized the basic equitable proposition it stands for.[18] Indeed, the Virginia Supreme Court embraced the made whole doctrine's underlying rationale:

---

[16] The made whole doctrine is the default rule in insurance cases. *See, e.g., Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 542, 253 N.W.2d 512, 514 (1977) (stating that "[n]onetheless, most of the insurance cases follow the common law rule" of the made whole doctrine); *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex. 1980) ("An insurer is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss."); *Washtenaw Mut. Fire Ins. Co. v. Budd*, 208 Mich. 483, 487,175 N.W. 231, 232 (1919) ("The [insurer] is entitled only to the excess which the [insured] received from it after full compensation for his loss.").
    The made whole doctrine appears rarely in property insurance cases because the insured typically recovers from the insurer the economic value of the loss, but the doctrine still applies. *See EMC Ins. Cos. v. Entergy Ark., Inc.*, 924 F.3d 483, 486 (8th Cir. 2019) (concluding that the made whole doctrine applies to property loss cases, even if the issue arises infrequently).

[17] Only one Virginia court has directly addressed the made whole doctrine in any context. *See PRC*, 47 Va. Cir. at *3. In *PRC*, a Virginia trial court rejected the plaintiff policyholder's made whole argument, but only after a careful examination of the facts of the case and not based on the nonexistence of the doctrine in Virginia. *See id.* at *3–4.

[18] *See, e.g., Title Ins. Co. of Richmond v. Indus. Bank of Richmond, Inc.*, 156 Va. 322, 336, 157 S.E. 710, 715 (1931) ("Until the insurer settles the claim no right of subrogation arises."); *Thomas v. Gov't Emps. Ins. Co.*, 51 Va. Cir. 111, 1991 WL 33250477, at *2 (1999) ("The right of

> The right of subrogation cannot be enforced until the whole debt is paid, and until
> the creditor be wholly satisfied there ought to be and can be no interference with
> his rights or his securities which might, even by bare possibility, prejudice or em-
> barrass him in any way in the collection of the residue of his claim.

*Obici*, 160 Va. at 362, 168 S.E at 344 (quoting *Barton v. Matthews*, 141 Ark. 262, 216 S.W. 693,

694 (1919)).  The *Obici* court applied the doctrine to deny the petitioner the right of subrogation,

holding that "it would be neither just nor equitable" to allow the potential subrogee, the insurer in

this context, to compete with the subrogor, here the insured.  *Id.*

Allowing AESLIC the right to subrogation before it settles SSPI's claim risks creating the

competition warned against in *Obici*.[19]  Although Virginia courts seem not to refer to the made

whole doctrine by name, the doctrine is alive and well in the Commonwealth and bars AESLIC

from subrogation until SSPI is fully compensated for its losses.

### ii. The Contract Does Not Override the Made Whole Doctrine

"Because the make whole doctrine is a default rule, the parties can contract out of the

doctrine."  *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997).  "[I]n order for plan language

---

subrogation does not arise until an injured party has received full compensation of a judgment.");
*see also White v. Nationwide Mut. Ins. Co.*, 361 F.2d 785, 787 (4th Cir. 1966) (applying Virginia
law to declare that "no paramount right of subrogation arises until the insured has received full
satisfaction of his judgment against [the tortfeasor]").

Federal courts in Virginia have also considered the made whole doctrine.  *See, e.g.*,
*Schwarz*, 2009 WL 2882034, at \*11.  *Schwarz* supports the proposition that Virginia law requires
SSPI to be made whole prior to any subrogation.  The defendant insurer in *Schwarz* had paid out
the *full amount* of the limit on the insurance policy, and there was no dispute over whether the
insurer had fully satisfied its contractual obligations arising from the policy.  *Id.*  Even still, the
United States Magistrate Judge recommended that the district court find that the insurer had no
right to subrogation because its insured had not been made whole.  *Id.*

[19] It is currently unknown whether the Contract, even if paid up to the limits of the policy,
will fully compensate SSPI.  SSPI asserts uninsured losses totaling $2,514,902.45 as of October
5, 2021.  (ECF No. 9 ¶ 96.)  According to SSPI, only $545,507.81 remains due under the terms
of the Contract.  (*Id.* ¶ 101.)  If the Contract does not fully compensate SSPI, SSPI's recourse is to
pursue the same third-party tortfeasors that AESLIC now demands the right to pursue in subroga-
tion.

to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery." *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) (emphasis in original). "[B]oilerplate subrogation clauses incorporate default common law subrogation rules, and do not modify or abrogate them." *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 544 F.3d 166, 170 (2d Cir. 2011).

The Contract does not opt out of the made whole doctrine because the subrogation clause contained therein is boilerplate. Both the Contract and Virginia law provide for subrogation. The relevant Virginia statute reads:

> Except for contracts or plans subject to § 38.2-3405[20] or § 38.2-2209,[21] when any insurer pays an insured under a contract of insurance which provides that the insurer becomes subrogated to the rights of the insured against any other party the insurer may enforce the legal liability of the other party. This action may be brought in its own name or in the name of the insured or the insured's personal representative.

Va. Code Ann. § 38.2-207. The relevant provision in the Contract is titled "Transfer of Rights of Recovery Against Others to Us." (ECF No. 9-1, at 37.) The provision is standard in fire insurance policies and required under Virginia law. *See* § 38.2-2105. It reads:

> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

(ECF No. 9-1, at 37.) This provision reiterates what Virginia statutory law already establishes: the general right of insurers to subrogation.

---

[20] "Virginia prohibits subrogation when an insurer pays hospital and medical benefits under a policy covering personal injuries caused by third persons." *Slusser v. Commonwealth*, 74 Va. App. 761, 780 n.13, 872 S.E.2d 223, 232 n.13 (2022).

[21] This statute prohibits subrogation provisions for medical payments in automobile liability policies. *See id.*

15

But the Contract provision does not abrogate the made whole doctrine. The Contract provision does not clarify who has "priority to the funds recovered and [the] right to any full or partial recovery." *Copeland Oaks*, 209 F.3d at 813. The phrase "to the extent of our payment" does not provide the clarity AESLIC says it does; courts have consistently interpreted similar provisions as boilerplate.[22] In *Schwartz*, a United States Magistrate Judge in the Western District of Virginia recommended that the District Court Judge reject an argument identical to AESLIC's, and the *Schwartz* defendant stood on firmer equitable footing.[23] The Court, therefore, finds that the Contract in this case does not preclude application of the made whole doctrine.

\*                    \*                    \*

Because this Court finds that the made whole doctrine exists under Virginia law and that the Contract does not preclude the doctrine's application, the Court will not dismiss SSPI's request for a declaration that it must be made whole prior to subrogation efforts by AESLIC.

### D. SSPI's Request for Attorneys' Fees and Costs

Section 38.2-209 of the Virginia Code "allows the court to award attorneys' fees and costs to the insured" in certain circumstances. *Am. Fire & Cas. Co. v. Raleigh Mine & Indus. Supply, Inc.*, No. 1:18cv8, 2018 WL 4387638, at \*3 (W.D. Va. Sept. 14, 2018). For the court to award attorneys' fees and costs to the insured, "[a] judge, not a jury, must determine whether an insurer

---

[22] *See, e.g., Fireman's Fund*, 644 F.3d at 169–70 (2d Cir. 2011); *Sapiano v. Williamsburg Nat'l Ins. Co.*, 28 Cal. App. 4th 533, 538 (1994); *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 503–05 (Fla. 2014).

[23] *See Schwarz*, 2009 WL 2882034, at \*10–11 (recommending that the district court find that the insurer may not pursue subrogation despite the following contract provision: "[i]f a person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment"). The defendant insurer in *Schwarz* had already paid up to the limits of the policy. *See id.* And, unlike AESLIC, the defendant insurer in *Schwarz* was not in the middle of a contract dispute with its insured that included allegations of fraud and bad faith claims handling. *See id.*

16

'has either denied coverage or failed or refused to make payment to the insured under the policy' in bad faith." *REVI, LLC v. Chi. Title Ins. Co.*, 290 Va. 203, 214, 776 S.E.2d 808, 814 (2015) (quoting Va. Code. § 38.2-209(A)). The Court finds that SSPI may be eligible for attorneys' fees and costs at the conclusion of this litigation. The Court will, therefore, deny AESLIC's motion to dismiss and will stay discovery on the amount of attorneys' fees and costs until it determines the question of breach of contract. The Court will consider SSPI's right to recover attorneys' fees and costs under § 38.2–209 after any finding in SSPI's favor on Count I of the amended complaint.

### III. GA'S MOTION TO DISMISS[24]

GA moves to dismiss Count III of the amended complaint, the only count that SSPI brings against GA. Count III alleges that GA made material misrepresentations amounting to fraud while processing SSPI's claim.

GA is not a party to the Contract.[25] GA, therefore, has no contractual duties to SSPI, and GA's liability for its conduct during the adjustment of SSPI's insurance claim sounds in tort.[26] As a corporation, GA's tort liability stems from the actions of its employees and agents.[27]

---

[24] *See supra* note 7.

[25] "Great American" appears eight times in the ninety-three page Contract. Five mentions are part of the phrase "Great American Tower," the name of the building wherein AESLIC is headquartered. (ECF No. 9-1, at 5–10.) "Great American" also occurs once on the title page as part of the phrase "Great American Insurance Group," the trade name of the defendants' corporate parent. (*Id.* at 2.) The Contract mentions "Great American" two other times in a "General Service of Suit Endorsement" provision that directs process to GA's general counsel in Cincinnati. (*Id.* at 4.)

[26] Because SSPI brings a claim for fraud against GA alone, the Court considers only the alleged misrepresentations attributable to GA. *See infra* note 27.

[27] "It is well established that traditional vicarious liability rules ordinarily make . . . employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). In Virginia, the employer is also liable "when [its] employee committed [a] tort while 'performing a normal function' of his assigned

In Virginia, "a litigant who prosecutes a cause of action for *actual fraud* must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[28] *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005) (emphasis in original) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999)).   Federal Rule of Civil Procedure 9(b) requires plaintiffs pursuing a fraud claim to "state with particularity the circumstances constituting fraud or mistake." "[A]llegations of fraud in a complaint 'must show, specifically and in detail,' all elements of the cause of action at a level which, if believed, would qualify as clear and convincing proof." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 382, 820 S.E.2d 596, 604 (2018) (quoting *Southall v. Farish*, 85 Va. 403, 410, 7 S.E. 534, 537 (1888)).

For the reasons set forth below, the Court finds that SSPI sufficiently pleads a claim for fraud against GA and will, therefore, deny GA's motion to dismiss Count III.

---

job." *Parker v. Carilion Clinic*, 296 Va. 319, 336, 819 S.E.2d 809, 819 (2018) (quoting *Gina Chin & Assocs. v. First Union Bank*, 260 Va. 533, 545, 537 S.E.2d 573, 579 (2000)).

GA employees "provide claim handling services to AESLIC" as part of GA's routine business operations.  (ECF No. 9 ¶ 22.)  Thus, to the extent that GA employees and agents made misrepresentations to SSPI while providing claims handling services to AESLIC, the Court attributes those misrepresentations to GA.

For clarity, the Court refers to GA throughout Section III when discussing actions taken by GA employees or agents.

[28] "Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions . . . ." *Milton v. ITT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998).  "Under Virginia law, the place of the wrong is the place the last event necessary to make an [actor] liable for an alleged tort takes place." *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (quoting *Gen. Assur. of Am., Inc. v. Overby-Seawell*, 533 Fed. Appx. 200, 206 (4th Cir. 2013) (internal quotations omitted)).  SSPI alleges the wrongful acts occurred in Virginia, therefore Virginia law applies to SSPI's fraud claim against GA.

### A. False Representations

To state a claim for fraud, the plaintiff must allege a misrepresentation of an existing fact, not "the mere expression of an opinion." *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 712 553 S.E.2d 714, 717 (2001) (quoting *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 110–11, 540 S.E.2d 134, 142 (2001)). No bright line test determines whether a false representation concerns a statement of fact or a matter of opinion. *See id.*

SSPI pleads that GA made false representations while asserting the protective safeguards defense.[29] First, on June 23, 2020, GA sent SSPI's counsel a lengthy, accusatory letter that quoted the Contract's provisions on cooperation and the protective safeguards provision. A second correspondence sent by GA counsel[30] later that same day "falsely accus[ed] SSPI of failing to cooperate with the site inspection" scheduled to begin the next day. (ECF No. 9 ¶ 60.) These two messages, sent after business hours on the day before the scheduled site inspection, constituted a

---

[29] SSPI asserts other false representations in support of its fraud claim against GA. Because the Court finds the facts surrounding the protective safeguards defense adequately support Count III, the Court need not address the other alleged false representations.

    The protective safeguards provision of the Contract requires SSPI to maintain an "[a]ctive and functioning Ansul System or Automatic Extinguishing System over commercial cooking surfaces and cooking equipment." (ECF No. 9-1, at 87.) The provision also requires SSPI to contract for quarterly inspection and maintenance of ducts, hoods, and filters. (*Id.*) Failure to comply with these requirements forfeits coverage under the Contract. (*Id.* at 87–88.)

[30] SSPI alleges that Reverski, outside counsel for GA, sent this second correspondence. As GA's counsel, communication with policyholders (and their counsel) is a "normal function of [Reverski's] assigned job." *Parker*, 296 Va. at 336, 819 S.E at 819 (quoting *Gina Chin & Assocs.*, 260 Va. at 545, 537 S.E.2d at 579). Whether Reverski is an employee of GA is more complicated; attorneys are typically independent contractors, not employees. *See Mellon Inv. Servs., LLC v. Longwood Country Garden Ctrs., Inc.*, 263 F. Appx. 277, 284 (4th Cir. 2008). Independent contractors, however, can still be agents of their employer. *See id.* The Court, therefore, attributes to GA at this stage of litigation alleged misrepresentations made by Reverski.

thinly veiled threat to SSPI: GA suspects that SSPI may bear some responsibility for the fire; SSPI must prove its innocence by complying with GA's demands, or SSPI risks not collecting on its insurance claim. This accusatory stance towards SSPI plausibly misrepresented existing facts because GA had already identified third party subrogation targets and invited them to participate in the site inspection. Put differently, GA knew on June 23, 2020, that it lacked any basis to assert the protective safeguards defense to payment of the claim.

The second set of false representations claimed by SSPI came on June 29, 2020. By this date, GA's subrogation counsel had informed SSPI's broker that the evidence gathered during the June 24, 2020 site inspection exculpated SSPI from responsibility for the fire. This indicates that GA had concluded internally that SSPI was not responsible for the loss. Even so, GA continued to assert the protective safeguards defense beyond June 29, 2020, requesting SSPI's cooperation in its continued investigation. GA did not pay any advance to SSPI until August 25, 2020. GA's continued assertion of a defense it knew had no basis constitutes additional misrepresentations of fact.[31]

---

[31] Discovery may reveal that GA, through its adjuster Miller, made additional misrepresentations. Miller contacted SSPI on June 7, 2020, two days after the fire, and offered an advance; GA confirmed this offer in writing the next day. But neither GA nor AESLIC paid the advance. On June 16, 2020, SSPI's insurance broker advised SSPI that GA now refused to provide that advance. On June 17, 2020, Miller communicated to SSPI that the request for an advance was "under consideration."

The Court attributes to GA any misrepresentations made by Miller during the adjustment of SSPI's claim, an act which falls within the "normal function of his assigned job." *See Parker*, 296 Va. at 336, 819 S.E.2d at 819 (quoting *Gina Chin & Assocs.*, 260 Va. at 545, 537 S.E.2d at 579).

### *B. Material Fact*

"[A] fact is material when it . . . deceives [a person] and induces him to act, or when without it the transaction would not have occurred." *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 563, 95 S.E.207, 211–12 (1956).

GA's false representations led SSPI to believe that GA suspected SSPI's involvement in causing the fire. The Court finds it plausible that GA made these false representations to coerce SSPI's cooperation in GA's pursuit of third parties that it already knew were responsible for the fire. The threat of receiving nothing on the claim placed pressure on SSPI to produce documents it otherwise would not have had to produce. Without the insurance money, SSPI's business risked failure. By inducing SSPI's compliance with the subrogation investigation, GA's alleged misrepresentations became material.

### *C. Intentional Misrepresentation with the Intent to Mislead*

"To willfully misrepresent is to make a statement deliberately and intentionally, knowing it to be false." *Glens Falls Ins. Co. v. Long*, 213 Va. 776, 779, 195 S.E.2d 887, 890 (1973). "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." *Viney v. Commonwealth*, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005). GA sent two direct communications to SSPI on June 23, 2020, that accused SSPI of failing to cooperate in the investigation and threatened SSPI with the protective safeguards provision of the Contract. GA did so despite suspecting that third parties caused the loss. In addition, although GA had definitively concluded that SSPI was not responsible for the fire by June 29, 2020, GA continued to assert the protective safeguards defense beyond that date. The Court draws the reasonable inference that by making these false representations, GA intended to make SSPI believe that assertion of the protective safeguards provision threatened SSPI's claim such that SSPI would

cooperate with GA's investigation by producing documents. By making these allegations, SSPI adequately pleads that GA made these false representations intentionally and knowingly and with the intent to mislead.

### D. Reliance on the Misrepresentation & Damage

"[I]t is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 246 Va. 365, 374, 437 S.E.2d 189, 194 (1993). "Typically, reasonable reliance is reserved for the trier of fact to determine." *Fessler v. IBM Corp.*, 959 F.3d 146, 154 (4th Cir. 2020). SSPI adequately pleads reliance on GA's misrepresentations. Because of GA's false representations regarding the pertinence of the protective safeguards provision, SSPI produced documents it otherwise would not have. The Court finds it reasonable that SSPI obliged GA's request for documents because SSPI's compliance made more likely any payout from its claim. Further, by incurring the costs of document production and related attorneys' fees that would not otherwise have been expended, SSPI suffered damage because of GA's misrepresentations.

\*        \*        \*

The Court, therefore, finds that SSPI adequately alleges that GA made material misrepresentations amounting to fraud while processing SSPI's claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant AESLIC's motion to dismiss Counts II and III of the amended complaint and the portion of Count IV that requests a declaration prohibiting compelled appraisal. The Court will deny AESLIC's motion to dismiss Count IV of the amended complaint to the extent Count IV seeks a declaration that SSPI is entitled to recover in full all uninsured losses before AESLIC may recover any amount in subrogation. The Court will allow

SSPI's request for attorneys' fees to proceed but will stay discovery regarding the amount of defendants' fees and costs until after a determination has been made on the issue of AESLIC's breach of contract.  Finally, the Court will direct AESLIC and SSPI to participate in the appraisal process, stay the case pending completion of the appraisal, and direct the parties to submit monthly status reports beginning on September 1, 2022—jointly, if possible—updating the Court on the status of the appraisal process.  (ECF No. 11.)

In addition, the Court will deny GA's motion to dismiss Count III of the amended complaint.  (ECF No. 16.)

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>19 August 2022</u>
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge